Nevin G. Smith Secretary Department of Administration Tallahassee
QUESTIONS:
1. Is the Tallahassee Memorial Regional Medical Center, Inc., a political subdivision of the state or an instrumentality of a political subdivision as provided by Ch. 650, F. S., and, if so, is the corporation a `coverage group' as provided by s. 218 of the Social Security Act?
2. Is the Tallahassee Memorial Regional Medical Center, Inc., a `unit' of the City of Tallahassee or a `special district' of the state, as provided by s. 121.021(8) and (9), F. S., thus enabling it to continue or obtain Florida Retirement System coverage pursuant to s. 121.051(2)(b), F. S.?
SUMMARY:
Unless otherwise provided by statute, governmental regulation, or charter, the Tallahassee Memorial Regional Medical Center, Inc., is not a political subdivision of the state or an instrumentality of a political subdivision of the state within the purview of Ch. 650, F. S., or s. 218 of the Social Security Act, nor is the Tallahassee Memorial Regional Medical Center, Inc., a private nonprofit corporation, a `city of the state,' `employer,' `covered group,' `unit of a city of the state' or `special district' under s. 121.021(8)-(10) and (34), F. S., in order to qualify to participate in the Florida Retirement System Act, pursuant to s.121.051(2)(b), F. S.
AS TO QUESTION 1:
The Municipal Hospital Board of the City of Tallahassee, created by Ch. 65-2299, Laws of Florida, became a covered entity (for Social Security purposes under the Federal-State Agreement, s. 218 of the Social Security Act, codified in 42 U.S.C.A. s. 418) by Modification 4 to Florida's Federal-State Social Security Agreement, supra, April 23, 1952. The City of Tallahassee itself, or its officers and employees, is not covered by or included in the original federal-state agreement or any modification thereof drawn to my attention.
The members of the hospital board were appointed by the City Commission of the City of Tallahassee, which body was empowered to remove any member of the hospital board for violating the provisions of Ch. 65-2299, supra, or for failure to attend meetings of the hospital board or to attend to the duties imposed by the statute, and to fill vacancies on the board. Among other things, the statute made it the duty of the hospital board `[t]o manage and operate the Tallahassee Memorial Hospital for the City of Tallahassee. . . .'
The 1979 Legislature enacted H.B. 825, brought into the statute books as Ch. 79-569, Laws of Florida, which was `An Act relating to the City of Tallahassee; authorizing the city commission of the City of Tallahassee to lease Tallahassee Memorial Hospital to a non-profit corporation . . . .' Section 1 of the act amended Ch. 65-2299, supra, by adding a new section thereto:
 Section 7. The City of Tallahassee is authorized to lease capital facilities of Tallahassee Memorial Hospital, including without limitation the real property, improvements, fixtures, equipment and other appurtenances to a non-profit corporation, approved by the City Commission, upon its determination that it is in the best interest of the City to do so; and provided that the first Board of Directors of said non-profit corporation shall be composed of the members of the Municipal Hospital Board.
Chapter 79-569, Laws of Florida, took effect June 30, 1979; it simply empowers the city to lease the city-owned hospital facility and property to `a non-profit corporation, approved by the City Commission,' upon its determination that it is in the best interest of the city to do so. The statute further provides that the initial board of directors of the nonprofit corporation is to be composed of the members of the existing municipal hospital board. The statute, of course, must be presumed to be valid and given effect unless or until it is judicially declared unconstitutional. City of Sebring v. Wolf, 141 So. 736 (Fla. 1932); Evans et ux. v. Hillsborough County, 186 So. 193 (Fla. 1938); and State ex rel. Atlantic Coastline R. Co. v. State Board of Equalizers, 94 So. 681 (Fla. 1922). This act neither establishes the Tallahassee Memorial Regional Medical Center, Inc., a nonprofit corporation, as an agency or instrumentality of the city by and through which the city is to operate the hospital facilities and properties nor creates or establishes a separate political subdivision of the state or the municipality distinct from and independent of the state or municipal government. The nonprofit corporation is, of course, a private corporation organized under general corporation laws (see ss. 607.007 and 617.01, F. S.), and is not a public body corporate and politic, nor does Ch. 79-569 purport to make it so. For an example of the governing body of a political subdivision of the state, as trustees, under trust deeds executed by the owners of a majority of the outstanding stock of a hospital corporation, utilizing a private corporation for profit and dividends on the stock held and administered in trust to provide for hospital care of the indigent citizens of a county in need of hospital treatment, see s. 155.01, F. S. While Ch. 79-569 provides that the first board of directors of the nonprofit corporation is to be composed of the members of the existing municipal hospital board, it does not make such hospital board's members ex officio the board of directors of the corporation, nor the municipal hospital board as such the managing body or officers of the corporation. Those members of the corporation's first board of directors sit as the directors of the corporation, not as the hospital board of the City of Tallahassee or anywise as an agency or officials of the city. No provision is made by the statute for the term of office of such `first directors' or the expiration of the terms of office of such directors. The bylaws of the Tallahassee Memorial Regional Medical Center, Inc., do provide for the expiration of the terms of the first board of directors of the corporation, but that is a corporate business concern of the private corporation, not a matter provided for by statute, governmental regulation, or charter. The statute in no way incorporates by reference the charter or bylaws of the subject corporation or any corporation, or in any manner makes any corporation or its managing board of directors an agency or instrumentality of the state or municipal government. The statute essentially empowers the governing body of the city to lease the city-owned capital facilities and properties to a private nonprofit corporation if the corporation (and implicitly its charter, bylaws, and membership) is approved by the city and if the governing body of the city finds it to be in the best interest of the city to lease the property to such private organization.
As indicated above, Ch. 79-569, Laws of Florida, amended Ch. 65-2299, Laws of Florida, by adding a new section thereto, but did not amend or repeal any of the other sections of Ch. 65-2299 or generally repeal any other laws or parts of laws in conflict with the provisions of Ch. 79-569. The legal consequences flowing from the 1979 amendment and subject lease entered into thereunder and their effect on the status or legal rights of employees and medical personnel theretofore appointed and employed by the city's municipal hospital board at the time Ch. 79-569 took effect and the lease in question was entered into between the city and subject nonprofit corporation necessarily involve the intent of the contracting parties, other factual matters (about much of which I am not advised), and other mixed questions of fact and law beyond my authority to resolve. However, once the authorization under Ch. 79-569 was effectuated, the law of contract and the general corporation laws of the state prevail, pursuant to the lease agreement and the corporate charter and bylaws, in determining the obligations, functions, rights, duties, and liabilities between the city and the subject nonprofit corporation. The Legislature, having empowered the city to lease the capital facilities and properties of the city's hospital to a private corporation and having provided for the corporation's `first directors' to be composed of the members of the city's hospital board, and the city, pursuant to Ch. 79-569, having entered into subject lease, and such `first directors' of the corporation apparently having assumed office as the managing board of the corporation and its operations, it would seem that the municipal hospital board of the city as an office or subdivision or part of the municipal government no longer has custody of the hospital facilities and properties and that board, at present, does not have any hospital facilities to manage and operate for the city. The `first board of directors' of the corporation within the purview of Ch. 79-569 does not derive its powers from Ch. 65-2299 or other law drawn to my attention but derives the same from the articles of incorporation and the bylaws of the private nonprofit corporation. Such `first board of directors' exercises its powers, performs its duties, and, apparently, is presently engaged in managing and operating the former Tallahassee Memorial Hospital, now Tallahassee Memorial Regional Medical Center, as officers of the corporation by virtue of and pursuant to the corporation's charter and bylaws. I would observe that under Article III of the lease agreement, the `title to all personal property, vehicles, intangible assets [and] accounts receivable' is vested in the subject corporation. Under Article VIII of the lease agreement, the city government has placed the corporation in quiet possession of the leased premises to secure its quiet possession of the leased premises against all persons lawfully claiming the same during the term of subject lease. The subject corporation, under Article XIV of the lease agreement, covenants to operate a `not-for-profit medical center including hospital and medical related programs for the . . . treatment and care of sick and injured people . . . consistent with accepted principles of hospital financial management [and] not to deny urgent or emergency hospital care to any person based on inability to pay.' But this is not an undertaking to operate the `not-for-profit medical center' for the city, or the indigent citizens of the city, or even as a charity hospital. The lease agreement (Article I) requires the corporation to use leased property `only for a medical center complex including a hospital, offices, and such other uses as would relate to a medical center complex,' and Article X thereof provides that the lease may be terminated upon the lessor's finding and determination that the `facilities are not being operated properly as a medical center complex.' While the foregoing considerations, as previously mentioned, are matters of contract and the charter of the corporation rather than statutorily prescribed conditions, duties, and functions, they do not make manifest any intent or requirement that the nonprofit corporation is to manage and operate the medical center complex for the city or as an agency or instrumentality of the city or for the indigent citizens of the city or anywise as a part of or autonomous division of the city government. Cf. ss. 155.01 and155.20, F. S.
Based on the foregoing analysis and Ch. 79-569, Laws of Florida, and in the absence of any other statutory prescription or direction, I conclude that the Tallahassee Memorial Regional Medical Center, Inc., a private nonprofit corporation, is not a political subdivision of the state or an instrumentality of a political subdivision of the state within the purview and for the purposes of Ch. 650, F. S., and s. 218 of the Social Security Act.
AS TO QUESTION 2:
The Tallahassee Memorial Regional Medical Center, Inc., a private nonprofit corporation, clearly is not an agency of the state or county or a `city of the state' within the purview of s.121.021(10), F. S., and thus such corporation is not an `employer' for purposes of or within the purview of the Florida Retirement System Act. Chapter 121, F. S.
The subject corporation, incorporated under the general corporation laws of the state, obviously is not an autonomous district or public body created by or under any statute enacted by the Legislature within the definitional meaning of s. 121.021(9), F. S. This corporation is not by virtue of any statute a public body corporate and politic. Thus it is not within the purview of Ch. 121, F. S., as a `special district.'
As I have already found in response to your first question, the subject corporation is not a department, division, or subdivision of the City of Tallahassee created by, organized under, or controlled or governed by any statute (other than the general corporation laws applicable to all for profit and nonprofit corporations, see s. 607.007, F. S. and s. 617.01, F. S., etseq.), or an agency or instrumentality of a political subdivision of the state within the purview of s. 650.02(6), F. S., or s. 218 of the Social Security Act. It should be apparent from my discussion under question 1 above that the employees of subject nonprofit corporation are not a `coverage group' within the purview of s. 218 of the Social Security Act (42 U.S.C.A. s. 418,et seq.) or a `covered group' within the scope of s. 121.021(34), F. S. Therefore, I am of the opinion that this private nonprofit corporation is not a `unit' of the City of Tallahassee as defined by s. 121.021(8) and within the meaning of or for purposes of the Florida Retirement System Act. As presently organized and existing, subject corporation is not eligible to elect or qualified to participate in the Florida Retirement System pursuant to s. 121.051(2)(b), F. S.
In summary, therefore, I conclude that, unless otherwise provided by statute, governmental regulation, or charter, the Tallahassee Memorial Regional Medical Center, Inc., is not a political subdivision of the state or an instrumentality of a political subdivision of the state within the purview of Ch. 650, F. S., or s. 218 of the Social Security Act, nor is the Tallahassee Memorial Regional Medical Center, Inc., a private nonprofit corporation, a `city of the state,' `employer,' `covered group,' `unit of a city of the state' or `special district' under s. 121.021(8)-(10) and (34), F. S., in order to qualify to participate in the Florida Retirement System Act, pursuant to s. 121.051(2)(b), F. S.
Prepared by:
John W. Williams Assistant Attorney General